IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-11180
Summary Calendar
_____

MARIA D DURAN

        Plaintiff - Appellant

  v.

INTEX AVIATION SERVICES, INC

        Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-403-R)
_____
September 13, 1996

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Maria D. Duran appeals the district court's granting of summary judgment in favor of her employer, Intex Aviation Services, Inc. ("Intex"), in her lawsuit alleging negligence against Intex. We affirm.

## I. BACKGROUND

_____

    [*]    Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Intex, a South Carolina corporation, is in the business of cleaning commercial aircraft on a contract basis. On October 6, 1992, Intex hired Duran, a native of El Salvador with no formal education. According to Duran, she can neither write nor speak English. On the day that she was hired, Duran signed an Enrollment and Waiver Election Form indicating that she wished to participate in Intex's Voluntary Occupational Insurance Plan (the "Plan"). The Plan is maintained in accordance with the requirements of the Employee Retirement Income Security Act (ERISA). For those Intex employees who elect to participate, the Plan provides certain benefits for occupational injuries and illnesses. Intex rejected coverage under the Texas Workers' Compensation Act ("TWCA"). In February 1993, Intex amended the Plan. Duran again opted to participate in the Plan, signing another Enrollment and Waiver Election Form on February 12, 1993.[1]

---

[1] The Enrollment and Waiver Election Form provides in pertinent part:

> As a condition to your participation in the Plan, you must agree to waive any right to bring an action against the Company or anyone affiliated with it under the Texas Workers Compensation Act or any other statute, case law or administrative ruling, whether for negligence or otherwise, to recover damages or other relief from the Company and/or its employees, officers, directors or other agents for any injuries which you sustain in the course of your employment, including but not limited to death. **This means that the benefits payable to you under the Plan will be the exclusive remedy for any injuries or death which you suffer during the course and scope of**

Duran alleges that on March 1, 1993, in the scope of her employment, she was riding in the back of an Intex truck driven by an Intex employee. The truck was stocked with cases of food and beverages and, allegedly due to reckless driving by the Intex employee, cases of beverages fell on top of her, causing serious bodily injuries. As a result of this accident, Duran filed a claim under the Plan and received medical and wage continuation benefits.[2] Duran brought suit against Intex for negligence in Texas state court. Intex removed the case to the United States District Court for the Northern District of Texas and moved for summary judgment. On November 9, 1995, the district court granted Intex's motion and dismissed the action, finding that by enrolling in the Plan, Duran waived any form of legal action and finding that she ratified her enrollment by accepting payments under the Plan. Duran timely filed a notice of appeal.

---

**your employment.**

The election portion of the Enrollment and Waiver Election Form contains the following language:

> **I hereby elect to participate in the Plan**. I understand that by electing to enroll in the Plan I **WAIVE** any right to bring an action against the Company or anyone affiliated with it as a result of any injury or death which I suffer in the course and scope of my employment and that benefits payable to me under the Plan will be my exclusive remedy for such injury.

[2] According to Intex, at the time the case was removed to federal court, Duran had received $10,961.78 in medical benefits and $3,458 in wage benefits under the Plan.

## II. ANALYSIS

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). First, we consult the applicable law to ascertain the material factual issues. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994); *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2673 (1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a dispute about a material fact is "genuine." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). There is no genuine issue for trial, however, if "the record--

4

taken as a whole--could not lead a rational trier of fact to find for the nonmoving party." *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1084 (5th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The arguments that Duran raises on appeal may be summarized as follows:  she did not waive her rights under the TWCA because she did not understand the effect of the Enrollment and Waiver Election Form that she signed; and the waiver is voidable because she signed the form under duress.  Additionally, Duran argues that such a waiver is void as against public policy.  Because Duran failed to raise this final argument to the district court,[3] we need not consider it.  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 n.10 (5th Cir.) (parties may not advance new theories or raise new issues to secure reversal of summary judgment), *cert. denied*, 506 U.S. 825 (1992).  We address Duran's two remaining arguments in turn.

Duran testified by affidavit that she does not speak, read, or write English and that she did not understand the meaning of

---

[3]     After noting that Duran did "not challenge the validity of the Plan under Texas law," the district court went on to explain that "similar plans have been upheld as enforceable by Texas courts. [*See, e.g., Collier v. Allstate Ins. Co.*, 395 F.2d 719, 720 (5th Cir. 1968); *Tigrett v. Heritage Bldg. Co.*, 533 S.W.2d 65 (Tex. Civ. App.--Texarkana 1976, writ ref'd n.r.e.).]  In fact, a recent decision in this District held that the identical Plan initiated by the same Defendant was valid under Texas law. [*Brito v. Intex Aviation Servs., Inc.*, 879 F. Supp. 650 (N.D. Tex. 1995)]."

the papers she signed. Despite the fact that she signed the waiver twice, once on the day she was hired and again four months later, Duran contends that she did "not understand the nature or effect of the waiver, nor . . . her right not to waive those substantive rights [provided by the TWCA]." Under Texas law, this argument is unavailing. As the district court pointed out, Texas courts have consistently held that individuals are charged with knowing and understanding the contents of what they sign. *See, e.g., Eubank v. First Nat'l Bank*, 814 S.W.2d 130, 134 (Tex. App.--Corpus Christi 1991, no writ) (holding that individuals have "an obligation to protect themselves by reading documents before signing them"); *see also Estate of Degley v. Vega*, 797 S.W.2d 299 (Tex. App.--Corpus Christi 1990, no writ) (finding contract enforceable despite appellant's limited understanding of English). Where the enforceability of a contract was challenged on the ground that the appellant could not speak, read, or write the English language, one Texas court pointed out that "[i]t is well-settled that illiteracy will not relieve a party of the consequences of his contract. . . . Therefore, if a person is unable to read the contract, he must have it read to him." *Nguyen Ngoc Giao v. Smith & Lamm P.C.*, 714 S.W.2d 144 (Tex. App.--Houston [1st Dist.] 1986, no writ) (citations omitted).

Recently this issue was addressed in a decision involving the same defendant and the same occupational insurance plan

involved in this case. *Brito v. Intex Aviation Servs., Inc.*, 879 F. Supp. 650 (N.D. Tex. 1995). As in the case at bar, an employee submitted affidavit testimony that he did not understand the "meaning and consequences" of the waiver he signed. *Id.* at 654. In *Brito*, the court granted summary judgment in favor of Intex. *Id.* at 655. Noting that "[a]bsent fraud, duress, or mental incompetence, a party who intentionally signs a document is bound by its contents," the *Brito* court held that the employee's claims against Intex were barred as a matter of law. *Id.* at 654. In the instant case, notwithstanding Duran's affidavit testimony that she did not understand the "nature or effect" of the waiver, we find that the district court did not err in granting summary judgment in favor of Intex; the waiver is enforceable as a matter of law.

Duran's second argument on appeal is that summary judgment was improper because a fact issue was raised as to duress. Duran contends that she was led to believe that she would lose her job if she refused to sign the Enrollment and Waiver Election Form. Under Texas law, however, the acts alleged by Duran do not constitute duress. There can be no duress "unless, (1) there is a threat to do some act that the party threatening has no legal right to do, (2) there is some illegal exaction or some fraud or deception, and (3) the restraint must be so imminent as to destroy a party's free agency without present means of

protection." *Rosas v. United States Small Business Admin.*, 964 F.2d 351, 356 (5th Cir. 1992). Even if it is true that Intex required Duran to participate in the Plan as a condition of employment, imposing such a condition on an at-will employee is not illegal. *See Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) ("The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary." (citations omitted)); *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) ("In employment at will situations, either party may impose modifications to the employment terms as a condition of continued employment."). If Intex required participation in the Plan, Duran was confronted with two validly imposed alternatives -- to sign up for the Plan and join the staff of Intex, or not. In *Van Arsdel v. Texas A&M Univ.*, 628 F.2d 344 (5th Cir. 1980), we held that duress was absent as a matter of law where an appellee made a reasoned choice between two such alternatives. *Id.* at 346 "We disagree with the [] conclusion that duress is present whenever a party is confronted with a dilemma." *Id.* at 345-46. Regarding the affirmative defense of duress, we conclude, as with Duran's first argument, that it was not error for the district court to grant Intex's motion for summary judgment. Duran's claims are barred

8

as a matter of law by her waiver.[4]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's granting of summary judgment in favor of Intex.

---

[4] In addition to finding that Duran's claims against Intex were barred by the waiver as a matter of law, the district court further concluded that Duran lost any rights to legal action by accepting payments under the Plan and thereby ratifying her enrollment in the Plan. Because Duran's appeal fails for the reasons stated above, we need not address the issue of ratification.